Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL XI

| HÉCTOR F. NAVAS CORDERO<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300218 | *Revisión de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: MA-292-23<br><br>Sobre: Reclasificación de Custodia |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2023.

El 15 de mayo de 2023, compareció ante este Tribunal de Apelaciones, el señor Héctor F. Navas Cordero (en adelante, señor Navas Cordero o parte recurrente), mediante escrito intitulado *Revi[s]ión Judicial Naturaleza Civil*. Por medio de este, nos solicita que revisemos la *Resolución de Hecho y Derecho*, emitida y notificada el 26 de abril de 2023, por Comité de Clasificación y Tratamiento (en adelante, Comité) del Departamento de Corrección y Rehabilitación (en adelante, parte recurrida o DCR). En virtud de la determinación recurrida, el DCR denegó la solicitud de reclasificación de custodia presentada por el señor Navas Cordero y ratificó la custodia máxima.

Por los fundamentos que se exponen a continuación, se confirma la determinación recurrida.

**I**

Según surge del expediente ante nuestra consideración, el 5 de abril de 2018, el señor Navas Cordero fue sentenciado a noventa

y nueve (99) años de cárcel por infracción al Art. 93-A del Código Penal de Puerto Rico[1]; a veinte (20) años de cárcel por infracción al Art. 5.04 la Ley de Armas (cuya pena era de diez años, pero al aplicarle el Art. 7.03, se estableció el doble de la pena para un total de veinte años)[2] y a veinte (20) años por infracción al Art. 93-A[3] del Código Penal, para una pena total de ciento diecinueve (119) años.

De igual forma, conforme al expediente, el 24 de abril de 2018, el señor Navas Cordero fue clasificado a custodia máxima debido a la pena de reclusión impuesta y a los delitos de severidad extrema.

Posteriormente, el 21 de octubre de 2022, el Comité le realizó una evaluación de custodia a la parte recurrente, en la cual, la puntuación total de custodia arrojó doce (12) puntos. En igual fecha, la parte recurrida suscribió un documento intitulado *Acuerdos del Comité de Clasificación y Tratamiento*, mediante el cual, dispuso lo siguiente:

G. Acuerdo del Comité: Se ratifica custodia máxima. Dormitorio: continúe en el B5 5015. Estudios: se refiere al área educativa. Trabajo: no se asigna. Tratamiento: se refiere al [á]rea de Saludo Correccional (Trastornos Adictivos). Se integra formalmente en el Programa de Aprendiendo a Vivir sin Violencia (PEA).

H. Fundamentos para los acuerdos tomados: El Manual de Clasificación de Confinados vigente establece que confinados con sentencias de 99 años o más, clasificados inicialmente en custodia máxima permanecerán en dicha custodia por cinco años. Luego de ese periodo serán evaluados. El confinado fue sentenciado por el Tribunal de Ponce a extinguir una sentencia de 119 años de reclusión, por los delitos de Art. 93 (A) Asesinato en primer grado, Art. 93 (A) Asesinato y Art. 5.04 L.A. Portación y uso de armas blancas/fuego. Ha cumplido de la sentencia impuesta un total de 4 años, 10 meses y 29 días. Adicional se evidencia que el MPC no cumple a cabalidad con el plan institucional, ya que se evidencia que en el periodo evaluado incurrió en un POSITIVO ADMINISTRATIVO, al rehusarse a la prueba para detectar el uso de sustancias controladas, realizada por el DCR. A raíz de esto se le radica querella disciplinaria #310-22-156, nivel I, código 137 (Rehusarse o negarse a someterse a pruebas de detección de sustancias controladas o

---

[1] Asesinato en Primer Grado
[2] Portación y uso de armas blancas/fuego
[3] Asesinato

alcohol, requeridas por el Departamento de Corrección). Saliendo incurso en 11 de agosto de 2022. Al aplicar la escala de reclasificación de custodia arroja puntuación correspondiente a un nivel de máximas restricciones. Demostrando con estos hechos no estar comprometido con el proceso de rehabilitación y no cumplir con las normas y reglas por las que se rige la [...]. El CCT entra en conocimiento que el MPC actualmente se encuentra tomando el tratamiento de Aprendiendo a Vivir sin Violencia, ofrecido por el Programa de Evaluación y Asesoramiento. Así las cosas y tomando en consideración la puntuación arrojada por la escala y para cumplir con el Manual de Clasificación de Confinado número 9151 del 22 de enero de 2020, el confinado deberá permanecer observando ajustes en máximas restricciones. Ubicación actual. Para evaluación y posible integración de los cursos vocacionales. Limitadas las áreas, no cuenta con los ajustes necesarios para realizar labores. Para evaluación y determinar necesidad de tratamiento. Para que continúe beneficiándose de los programas que se ofrecen en la institución, ya que cumple por delitos que envuelven violencia contra el ser humano.

A tales efectos, el DCR emitió la *Resolución de Hecho y Derecho*, donde ratificó la clasificación de custodia máxima conforme al Manual de Clasificación de Confinados.

Así las cosas, el 15 de febrero de 2023, el señor Navas Cordero presentó una *Solicitud de Remedio Administrativo*. Mediante esta, solicitó que se le proveyera el tratamiento de sustancias adictivas debido a que contaba con el referido hace unos meses y no se lo habían provisto. Adujo que esto podía afectarle, ya que estaba próximo a cumplir cinco (5) años en custodia máxima y que ello le impediría solicitar reclasificación. El 27 de marzo de 2023, la División de Remedios Administrativos emitió la *Respuesta del [Á]rea Concernida/Superintendente* donde le indicó a la parte recurrente que, se encontraba en espera de espacios disponibles para comenzar las terapias de trastornos adictivos.

Por otro lado, el 26 de abril de 2023, el Comité le realizó una evaluación de custodia al señor Navas Cordero, en esta, arrojó una puntuación total de 3 puntos. Mediante el *Acuerdo del Comité de Clasificación y Tratamiento*, la parte recurrida dispuso lo siguiente:

G. Acuerdos del comité: **Se ratifica custodia máxima. Dormitorio: continúe en el B5 5015. Estudios: continúe referido al área educativa. Trabajo: continúe asignado a rendir labores de mantenimiento cancha en el B5 lado izquierdo. Tratamiento: continúe referido al área de Salud Correccional (Trastornos adictivos). Se da de baja de las terapias del Programa de Aprendiendo a Vivir sin Violencia (SPEA).**

H. Fundamentos para los Acuerdos tomados: **Al aplicar la escala de reclasificación de casos sentenciados, el CCT acogió la modificación discrecional para un nivel de custodia más alto, ya que la puntuación obtenida por la escala no refleja los elementos necesarios para una evaluación objetiva y compleja del caso. Por lo que hace uso de: historial de violencia excesiva y desobediencia ante las normas. Toda vez que se desprende de sus expedientes que este de manera ilegal, voluntaria, maliciosa y criminalmente, actuando en común acuerdo con otros 4 individuos, le infirió múltiples heridas de balas en diferentes partes del cuerpo a otro ser humano, privándolo del derecho a la visa. También, este en un comportamiento deliberado, realizó actos equívocos con el fin de ocasionarle la muerte a otra persona que se encontraba con el fallecido, infiriéndole múltiples heridas de balas en diferentes partes del cuerpo, sin que se consumara el delito pretendido. Estos actos los cometió con una pistola calibre .40 para la cual no poseía licencia expedida por la Policía de P.R. ni el Tribunal de Primera Instancia. este acto de violencia desmesurada no sólo cobró la vida de un ser humano, sino que también atentó contra la vida de otro ser humano que se encontraba en el lugar de los hechos. Con estos actos ha quebrantado las normas que garantizan la sana convivencia en la sociedad, perfilándose así, como un ciudadano en completo desdén del bienestar de su comunidad y un peligro para la sociedad en general. Siendo sentenciado por el Honorable Tribunal Superior de Ponce a cumplir una pena de 119 años. Cuenta con un mínimo de sentencia para el 6 de noviembre de 2062 y un máximo tentativo para el 6 de noviembre de 2136, restándole así alrededor de 113 años para finalizar la sentencia impuesta. Por lo que, con su sentencia, el Tribunal pretende salvaguardar la seguridad pública, simultáneamente garantizando la rehabilitación del miembro de la población correccional. Destacamos que, a pesar de haber sido debidamente juzgado y declarado convicto por dichos delitos, a 5 años y 5 meses de estar confinado, aún no ha realizado una introspección sobre sus acciones pasadas, negando de forma continua su participación en los actos criminales descritos anteriormente, alegando su inocencia y evadiendo asumir responsabilidad de sus actos. Durante su confinamiento en custodia máxima ha hecho eco de la desobediencia ante las normas que lo llevó a estar recluido al incurrir en querella**

**disciplinaria por negarse a realizarse prueba para detectar […] sustancias controladas, realizada por el DRC, lo que constituye en positivo administrativo. Demostrando con esta conducta no haberse alejado de la vida delictiva y no cumplir con las normas y reglas por las que se rige la agencia. El CCT entra en conocimiento que completó el tratamiento Psico-Educativo de Aprendiendo a Vivir Sin Violencia, ofrecido por el SPEA. Sin embargo, el CCT recalca que el proceso de rehabilitación es uno gradual y complejo, por ende, la consecuencia directa de completar tratamientos dirigidos a este fin, debe poder mesurarse en una constante de conducta positiva que certifique el efecto restaurativo y duradero que han aportado a la transformación de la conducta delictiva de los miembros de la población correccional. Meramente completar los mismos no es garantía incontrovertible de una modificación en la conducta de los confinados. Avenimos en conocimiento que se encuentra en lista de espera para recibir las terapias de Trastornos Adictivos, toda vez que posee historial de uso de sustancias controladas, lo que hace imperioso que se beneficie de dichas terapias. Terapias que al presente son ofrecidas en esta institución. Cabe señalar que la evaluación de custodia comprende desde la fecha de su ingreso hasta el presente. Recalcando aún más la conducta institucional como reflejo de comportamiento real del confinado durante su reclusión. Exhortamos al confinado a mantener una conducta positiva y estable que lo lleve a demostrar sentido de responsabilidad e introspección hacia el confinamiento, que su conducta y actitudes relejen un verdadero cambio, mientras se produce la rehabilitación moral y social. Ubicación actual, para evaluación y determinar necesidades educativas. Por necesidad de servicios y disponibilidad del confinado. Para evaluación y determinar necesidad de tratamiento. Completó las terapias el 15 de diciembre de 2022.**

Consecuentemente, en igual fecha, el DCR emitió la resolución cuya revisión nos ocupa. Como parte de sus determinaciones de hechos, el DCR expuso que, el señor Navas Cordero había sido clasificado inicialmente en custodia máxima al ingresar a prisión, lo anterior, debido a que tomaron en consideración que este cumplía una pena de ciento diecinueve (119) años de reclusión por delitos de severidad extrema. Indicó que, el nivel de custodia máxima había sido ratificado en las siguientes fechas: 16 de abril de 2019, 18 de octubre de 2019, 22 de octubre de 2020, 29 de abril de 2021, 22 de octubre de 2021 y 10 de mayo

de 2022, ello conforme al Manual de Clasificación de Confinados, el cual establece que, "todo confinado con sentencia de 99 años o más, clasificados en custodia máxima como resultado de la sentencia, permanecerá en dicha custodia por 5 años y luego esto[s] serán evaluados". Añadió, además que, para el 21 de junio de 2022, la parte recurrente se rehusó a ser sometido a la prueba de detección de sustancias controladas, realizadas por el DCR y que, ello constituyó un positivo administrativo.

De igual forma, el DCR expuso las siguientes conclusiones de derecho:

> El Manual de Clasificación del Confinado establece que el proceso de clasificación coordina la custodia física de los confinados en programas y recursos disponibles dentro del Sistema Correccional. Más aún, un proceso sistemático de clasificación contribuye a mantener a la sociedad protegida de las personas que han violentado las reglas formales de comportamiento. Por lo tanto, para lograr un sistema de clasificación funcional, el proceso tiene que ubicar a cada confinado en el programa de nivel de custodia menos restrictivo posible para que el confinado cualifique, sin menoscabar la seguridad y las necesidades de la sociedad, de los demás confinados y del personal correccional. La reevaluación de la custodia no necesariamente tiene como resultado un cambio de custodia o vivienda asignada, su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.

> Al evaluar la custodia del miembro de la población correccional, el C.C.T. concluye ratificar la custodia **máxima**. Al aplicar la escala de reclasificación de casos sentenciados, el CCT acogió la modificación discrecional para un nivel de custodia más alto, ya que la puntuación obtenida por la escala no refleja los elementos necesarios para una evaluación objetiva y compleja del caso. Por lo que hace uso de: historial de violencia excesiva y desobediencia ante las normas. Toda vez que se desprende de sus expedientes que este de manera ilegal, voluntaria, maliciosa y criminalmente, actuando en común acuerdo con otros 4 individuos, le infirió múltiples heridas de balas en diferentes partes del cuerpo, sin que se consumara el delito pretendido. Estos actos los cometió con una pistola calibre .40 para la cual no poseía licencia expedida por la Policía de P.R. ni el Tribunal de Primera Instancia. Este acto de violencia desmesurada no sólo cobró la vida de un ser humano, sino que también atentó contra la vida de otro ser humano que se encontraba ese día en el lugar de los hechos. Con estos actos ha quebrantado las normas que garantizan la sana convivencia en sociedad,

perfilándose así, como un ciudadano en completo desdén del bienestar de su comunidad y un peligro para la sociedad en general. Siendo sentenciado por el Honorable Tribunal Superior de Ponce a cumplir una pena de 119 años. Cuenta con un mínimo de sentencia para el 6 de noviembre de 2062 y un máximo tentativo para el 6 de noviembre de 2136, restándole así alrededor de 113 años para finalizar la sentencia impuesta. Por lo que, con su sentencia, el Tribunal pretende salvaguardar la seguridad pública, simultáneamente garantizando la rehabilitación del miembro de la población correccional. Destacamos que, a pesar de haber sido debidamente juzgado y declarado convicto por dichos delitos, a 5 años y 5 meses de estar confinado, aún no ha realizado una introspección sobre sus acciones pasadas, negando de forma continua su participación en los actos criminales descritos anteriormente, alegando su inocencia y evadiendo asumir responsabilidad de sus actos. Durante su confinamiento en custodia máxima ha hecho eco de la desobediencia ante las normas que lo llevó a estar recluido, al incurrir en querella disciplinaria por negarse a realizarse prueba para detectar el uso de sustancias controladas, realizada por el DCR, lo que constituye en positivo administrativo. Demostrando con esta conducta no haberse alejado de la vida delictiva y no cumplir con las normas y reglas por las que se rige la agencia. El CCT entra en conocimiento que completó el tratamiento Pisco-Educativo de Aprendiendo a Vivir sin Violencia, ofrecido por el SPEA. Sin embargo, el CCT recalca que el proceso de rehabilitación es uno gradual y complejo, por ende, la consecuencia directa de completar tratamientos dirigidos a este fin, debe poder mesurarse en una constante de conducta positiva que certifique el efecto restaurativo y duradero que han aportado a la transformación de la conducta delictiva de los miembros de la población correccional. Meramente completar los mismos no es garantía incontrovertible de una modificación en la conducta de los confinados. Avenimos en conocimiento que se encuentra en lista de espera para recibir las terapias de Trastornos Adictivos, toda vez que posee historial de uso de sustancias controladas, lo que hace imperioso que se beneficie de dichas terapias. Terapias que al presente son ofrecidas en esta institución. Cabe señalar que la evaluación de custodia comprende desde la fecha de su ingreso hasta el presente. Recalcando aún más la conducta institucional como reflejo de comportamiento real del confinado durante su reclusión. Exhortamos al confinado a mantener una conducta positiva y estable que lo lleve a demostrar sentido de responsabilidad e introspección hacia el confinamiento, que su conducta y actitudes reflejen un verdadero cambio, mientras se produce la rehabilitación moral y social.

Inconforme con la determinación del DCR, la parte recurrente acudió ante este foro revisor mediante escrito intitulado *Revi[s]ión Judicial Naturaleza Civil.* Hacemos constar que, la parte recurrente

no realizó ningún señalamiento de error, sin embargo, nos solicita que, revoquemos la determinación del Comité y ordenemos la reevaluación de custodia del señor Navas Cordero.

Por no entender necesaria la comparecencia de la parte recurrida, prescindimos de esta[4].

**II**

**A.** ***Estándar de Revisión Judicial de Determinaciones Administrativas***

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *OEG v. Martínez Giraud,* 2022 TSPR 93, 210 DPR ___ (2022); *Pérez López v. Depto. Corrección,* 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *OEG v. Martínez Giraud*, supra; *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

---

[4] En virtud de la Regla 7 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R.7, este tribunal tiene la facultad para prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de disponer el recurso de manera eficiente.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[5]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el

---

[5] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otros,* supra, pág. 819-820. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra, pág. 627. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud,* supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas

instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

### B. Reglamento Núm. 8583

Conforme a las disposiciones contenidas en la LPAU y acorde con el Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, el cual establece las facultades del Departamento de Corrección y Rehabilitación, se creó el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583 de 3 de junio de 2015 (Reglamento Núm. 8583). Además, este fue promulgado al amparo de la ley federal conocida como *Civil Rights of Institutionalized Person Act,* con el fin de canalizar de forma efectiva los reclamos de la población correccional. *Pérez López v. Depto. Corrección*, supra, pág. 670.

El objetivo principal del referido esquema legal es que, toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal del Departamento de Corrección y Rehabilitación. Asimismo, este tiene como objetivo el evitar y reducir la presentación de pleitos en los tribunales de instancia. Véase, Introducción del Reglamento Núm. 8583, *supra*; *Pérez López v. Depto. Corrección*, supra, pág. 670. En específico, la Regla VI del Reglamento Núm. 8583, dispone que la División de Remedios Administrativos, tendrá jurisdicción para atender toda solicitud de remedio

presentada por los miembros de la población correccional, relacionada directa o indirectamente con actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional, entre otras. *Pérez López v. Depto. Corrección*, supra, pág. 670.

Por otro lado, la Regla XIII, Sección 5, del Reglamento 8583, *supra*, dispone que el Evaluador tiene la facultad para desestimar las solicitudes de los miembros de la población correccional cuando se dan una serie de circunstancias, como haber radicado la solicitud de remedio más de una vez sobre el mismo asunto.

Finalmente, el Reglamento 8583, *supra*, dispone que, el Tribunal de Apelaciones podrá realizar la revisión judicial de las solicitudes de remedios administrativos instadas por los miembros de la población correccional. *Pérez López v. Depto. Corrección*, supra, pág. 671. En lo pertinente, dispone lo siguiente:

1. El miembro de la población correccional podrá solicitar revisión ante el Tribunal de Apelaciones, dentro del término de (30) días calendarios, contados a partir de la fecha del archivo en autos de la copia de la Notificación de la Resolución de Reconsideración, emitida por el Coordinador de Remedios Administrativos o noventa (90) días a partir de la radicación de la Solicitud de Reconsideración acogida, si la Agencia no actúa conforme a la misma.

2. [...][6]

## C. *Manual para la Clasificación de Confinados, Reglamento Núm. 9151 del 22 de enero 2020*

El Manual para la Clasificación de los Confinados, Reglamento Núm. 9151 del 22 de enero 2020 (en adelante, Manual Núm. 9151) fue promulgado en virtud de las facultades conferidas a la Secretaria del Departamento de Corrección y Rehabilitación, el Plan de Reorganización Núm. 2-2011, según enmendado y la Ley

---

[6] Regla XV del Reglamento Núm. 8583, *supra*.

Núm. 38-2017, según enmendada, mejor conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec 9601 *et seq.* Entre los propósitos del referido manual está, establecer un sistema organizado para ingresar, procesar y asignar a las personas privadas de su libertad a instituciones y programas de adultos del Departamento de Corrección y Rehabilitación. En el mismo, se propone como meta, ayudar a las personas privadas de libertad en su readaptación y posible reintegración a la sociedad.

El aludido manual, en su sección 7, dispone sobre los procedimientos para la revisión del nivel de custodia de los confinados. Este procedimiento de revisión se da con el fin de determinar cuál es el nivel de custodia apropiado para el confinado. Esta sección resume los objetivos de la reclasificación de custodia. En particular, indica que, el Formulario de Reclasificación de Custodia es utilizado para actualizar y revisar la evaluación inicial de custodia del confinado y si procede que se mantenga o se modifique. Manual Núm. 9151, *supra.* Indica, además que, esta reevaluación tiene como propósito principal el verificar la adaptación del confinado y atender cualquier situación que pudiese surgir. Asimismo, establece que, la reevaluación de custodia, no necesariamente tendrá como resultado el cambio de la clasificación de custodia o la vivienda asignada. Manual Núm. 9151, *supra.*

El Manual Núm. 9151, *supra*, detalla el procedimiento de reclasificación y los requisitos con los cuales el Técnico de Servicios Sociopenal deberá cumplir al hacer una recomendación para reclasificación de custodia. Entre estos requisitos se encuentran los siguientes: revisar el auto de prisión y los documentos de apoyo complementarios que obran en el expediente final del confinado; revisar los formularios médicos y de salud mental del confinado, así como las puntuaciones de aptitud correspondientes a educación,

adiestramiento vocacional y trabajo; además, tendrá que realizarle una entrevista al confinado con el fin de explicarle el proceso de reclasificación y verificar y estudiar los datos básicos relacionados con la clasificación, incluyendo delitos actuales, sentencias actuales, historial delictivo, orden de detención y arresto, cambios en la cantidad de la fianza (sumariados solamente), encarcelamientos previos bajo el DCR. fecha de excarcelación prevista (sentenciados solamente), récord de conducta disciplinaria de la institución y récord de participación de programas. Sección 7, Manual Núm. 9151, *supra.*

Nuestro Máximo Foro ha señalado que, la determinación administrativa respecto al nivel de custodia asignado a los confinados, requiere que se lleve a cabo un balance de intereses. Este balance se basa en, "[e]l interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal", por otra parte, "[e]stará el interés particular del confinado de permanecer en un determinado nivel de custodia". *Cruz v. Administración,* 164 DPR 341, 352 (2005).

Es sabido que, la reevaluación del nivel de custodia, no necesariamente tendrá como resultado el cambio de la clasificación de custodia. Sección 7, Manual Núm. 9151, *supra*; *Cruz v. Administración*, supra, pág. 354. Lo anterior, debido a que, el Comité tiene discreción al evaluar y determinar si el confinado es merecedor de un nivel menor de custodia. Mediante el proceso de reevaluación, el Comité tiene la oportunidad de atender las necesidades del confinado, observar su progreso y recomendar posibles cursos de acción respecto a su rehabilitación. *Íd.* Finalmente, la reclasificación del confinado dependerá de una multiplicidad de factores que han sido formulados mediante los manuales y reglamentos reseñados, y que, tienen el efecto limitante

sobre la discreción de la agencia al momento de adjudicar controversias relativas a la reclasificación de custodia. *Íd.*

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a resolver.

**III**

En esencia, la parte recurrida nos solicita que revisemos la *Resolución de Hecho y Derecho* emitida por el Comité de Clasificación y Tratamiento del DCR. Por medio de esta, el DCR ratificó la clasificación de custodia máxima del señor Navas Cordero.

Según el derecho expuesto, la sección 7 del Manual Núm. 9151, *supra*, dispone sobre el procedimiento para la revisión del nivel de custodia de los confinados. Tal procedimiento, tiene como propósito evaluar y determinar el nivel de custodia apropiado para los confinados. Asimismo, indica que, para actualizar y revisar la evaluación inicial de custodia del confinado, se utiliza el Formulario de Reclasificación de Custodia[7]. La reevaluación de nivel de custodia, tiene como propósito examinar la adaptación del confinado, así como atender cualquier situación que pudiese presentarse.[8]

Conforme al Manual Núm. 9151, *supra*, el Comité le realizó al señor Navas Cordero una evaluación sobre modificación de custodia. Según se desprende del expediente, el Comité tomó varios factores en consideración para realizar la aludida evaluación y ratificar la clasificación de custodia máxima de la parte recurrente, entre estos, se encuentran su historial de violencia excesiva, su desobediencia ante las normas de la institución carcelaria y su comportamiento desde su ingreso a la institución carcelaria, hasta la fecha en que se realizó la evaluación. Asimismo, añadió que, el señor Navas Cordero tampoco había demostrado mejoría en su

---

[7] Manual Núm. 9151, *supra*
[8] *Íd.*

comportamiento, ni había realizado una introspección de su conducta.

Es menester destacar que, la reevaluación del nivel de custodia, no necesariamente tendrá como resultado el cambio de la clasificación de custodia. Lo anterior, debido a que, el Comité tiene discreción al evaluar y determinar si el confinado es merecedor de un nivel menor de custodia[9].

De acuerdo a lo anterior, colegimos que, la agencia pudo evaluar de manera eficiente el nivel de custodia adecuado para el señor Navas Cordero, basándose en su conocimiento especializado y en los factores ya discutidos. En la controversia que nos ocupa, la parte recurrente no presentó evidencia suficiente que derrotara la presunción de legalidad y corrección que suponen las determinaciones administrativas[10]. Cónsono con lo anterior, la parte recurrente no nos colocó en posición de variar la decisión del ente administrativo.

Ante la ausencia de una actuación arbitraria, ilegal, irrazonable o que constituya un abuso de discreción por parte de la agencia administrativa, razonamos que resulta innecesario que intervengamos con su determinación.

**IV**

Por los fundamentos que anteceden, se confirma la determinación recurrida.

Notifíquese a las partes, al Procurador General y al Secretario del Departamento de Corrección y Rehabilitación. El Administrador de Corrección deberá entregar copia de esta *Sentencia* al confinado, en cualquier institución donde este se encuentre.

---

[9] *Íd*; *Cruz v. Administración*, supra, pág. 354.
[10] Véase *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág. 127; *Torres Rivera v. Policía de PR,* supra, pág. 626.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones